BENIAH C. GOODWIN, administrator, *vs.* WILLIAM NYE and others.

*Municipal officers—authority of, to locate school-house.*

The municipal officers of a town have no authority to 'decide where a school-
house shall be placed,' until 'more than one third of the voters present and vot-
ing' at a district meeting, legally called for the purpose, shall have objected to
the place voted by the majority.

The simple adjournment for one month of a district meeting, called for the pur-
pose of locating a school-house, lays no foundation for the jurisdiction of the
municipal officers in the premises.

ON REPORT.

TRESPASS QUARE CLAUSUM.

It was admitted that a trespass was committed by the defendants
[a building committee] as alleged in the writ, unless they show
that the premises had been legally designated, laid out, and taken
for a school-house lot for school district No. 2, in Mercer.

The view taken by the court, renders a report of the following
facts only, necessary.

On Aug. 10, 1871, a meeting of the district was notified, by the
agent, to be held on Aug. 18, 1871, ' to see if the said district
will vote to select a suitable lot of land to build or put a new
school-house thereon,' etc.

At a meeting held Aug. 18, in accordance with the previous
call, without voting upon the article in relation to selecting a site
for a school-house, the district ' voted to adjourn to Sept. 18, 1871.'
And at the adjourned meeting, the district voted, *nem. con.*, ' to
select the lot on which the school-house stands and has stood for
the last twenty years,' etc.

It appeared that on Aug. 31, 1871, the selectmen issued a war-
rant for a meeting of the district, upon the application of three
persons named, ' legal voters in said district,' to be held Aug. 28,
1871, ' for the purpose of hearing the inhabitants of said district,
on the subject of the disagreement in respect to a suitable place to

Goodwin *v.* Nye.

be selected for the erection of a school-house in said district.'
That after the hearing, the selectmen selected a place upon the
land of Hannibal Ingalls (plaintiff's intestate, since deceased), and
proceeded to locate the lot and fix the damages. · That Ingalls re-
fused to sell the land, and after tender of the damages the defend-
ants, as building committee, built a house upon the lot thus desig-
nated, which the district occupied during the winter of 1871-2.

The full court to enter such judgment as the law and facts re-
quired.

*S. D. Lindsey,* for the plaintiff.

*Hiram Knowlton,* for the defendants.

The court do not hold school-districts and towns to such strict
compliance with the statute, as other parties. *Kellar* v. *Savage,*
17 Maine, 447; *Mussey* v. *White,* 3 Greenl. 301; *Chapman* v.
*Lincoln,* 56 Maine, 394; *Austin* v. *York,* 57 Maine, 304; *Wells* v.
*Battelle,* 11 Mass. 481.

The district refused by adjourning. Refusing to act is equiva-
lent to an absolute vote refusing to locate. *Blake* v. *Sturtevant,*
12 N. H. 73.

The subsequent action of the district shows the determination of
the majority.

KENT, J. The defendants justify their entry on the lot in ques-
tion, on the ground that, as they allege, the *locus in quo* had been
legally laid out, located, and taken from the owner for a school-
house lot, agreeably to the provisions of the R. S., c. 11. The
only question before us is whether it has been thus taken. It is
admitted, that, if taken, it was taken without the consent of the
owner and against his declared will. In such case it is familiar
law, that all the substantial requirements of the statute, conferring
this power of eminent domain on a school district, must have been
complied with, before the owner, objecting, can be dispossessed of
his real estate.

The case, as presented to us, involves many facts and records

touching the proceedings of the school district, which on their face lead to the suspicion, at least, that the inhabitants of this district in Mercer are more anxious to save money than to advance the cause of education, or to secure the comfort of their children when at school. But these inferences cannot affect the right of the plaintiff's intestate to continue to hold his title to his lot of land. Has it been legally taken from him ?

It is not contended that the district has, by vote, located a school-house on this lot. But the legislature has, very wisely, refused to leave the final determination of this and many other questions to a vote of the district, knowing well the unwillingness of some districts to raise or expend money for erecting or repairing such school-houses as the wants of the district require, or for purchasing suitable lots for them to stand upon. It has, therefore, given a *quasi* appeal from the district to the town, or its municipal officers, whenever it is apparent that the district is too careless or indifferent to do what the comfort of the children and the best interests of the cause of education require.

The first matter, where this appeal to the town is allowed, is where the district refuses to raise money for the purposes before alluded to, such as erecting or repairing school-houses, or purchasing land for the same, and other purposes specified in § 24, item 1. In such cases, where the refusal is to raise money, there seem to be two provisions, each providing for a distinct mode of appeal. 1. By § 27, where a minority, at any legal meeting of the district, are of the opinion that the majority are opposed to raising a sum sufficient for the purpose in question, any five or more voters may require of the municipal officers of the town to bring the question before the town at its next meeting, by an article in the warrant, and the town shall determine the matter effectually and finally, as provided in that section. This was the first provision that was made. In 1867 (R. S., c. 11, § 28), it was provided, that without any meeting of the district, the superintending school committee might testify to the municipal officers, that in their opinion the district unreasonably refuses or neglects to raise money for the

specified purposes, and that, thereupon, the town officers should insert an article in the warrant ' to see if the town will vote to raise money, in such school districts, for the above purposes.' And if raised, it is to be assessed and collected as if originally raised by the district. And the municipal officers shall appoint a committee to superintend the expenditure of the money.

These provisions, however, all relate to raising money and its expenditure. But there is another fruitful source of local trouble and disagreement, which often leads to bitter feuds and neighborhood quarrels. Where shall the school-house be located? And this is the question, which it has been found expedient also to remove from the final action of the district. But the mode is somewhat different, and the appeal is to a different tribunal.

The power ' to determine where the school-house shall be located' is, in the first instance, given directly and unqualifiedly to the district. Chap. 11, § 24, item 2.

The only qualification or limitation of this absolute right on this point of location is found in § 32. It provides ' that at any district meeting, called for the purpose of removing a school-house or locating one to be erected, if more that one-third of the voters present and voting object thereto, the clerk shall make a record of the facts, and the municipal officers on written application of any three or more of said voters, or any committee of the district, made within thirty days thereafterwards, shall, as soon as may be, appoint a time and place in the district to hear the parties, and give such notice as is required for a district meeting; and after such hearing, they may decide where the school-house shall be placed.' Some other provisions, as to certifying, and the duty of the district to erect or remove the school-house, follow in the same section.

Then in the next section, § 33, we find the authority to take land. ' When a location for the erection or removal of a school-house and necessary buildings has been legally designated, and the owner thereof refuses to sell or asks an unreasonable price for it in the

opinion of the municipal officers, they may lay out a school-house lot, not exceeding forty square rods, and appraise the damages,' etc.

It will be observed that a vote of two-thirds of the district is final, and no appeal lies. The location of the school-house is a matter peculiarly proper for the determination of the inhabitants of the district, and,·therefore, the statute has given them this power. But it has limited this power to determine this question finally, when more than one-third of the voters present and voting object, and the clerk makes a record of the fact. This is the only case in which the question may be carried to another tribunal. But in such a case, the appeal is not to the town, but to the municipal officers. The town has no power to act, in any case, relating to this matter of the location of a school-house.

This seems to have been the understanding of the town and the school district in this case. The town acted on the matter of raising money, but not on the question of location. A district meeting was called to meet on the 18th of August, 1871, under a warrant which contained an article, ' to see if the district will vote to select a suitable lot of land to build or put a new school-house thereon.' The district met and voted to adjourn to Sept. 18, 1871. Thereupon, and without further action by the district, three persons, described as legal voters of the district, applied in writing to the municipal officers of the town to act on the matter and determine the location, under the provisions of § 32 before recited. These officers gave notice on the 21st day of August, that they would meet the legal voters of the district on the 28th of August, and they did meet in pursuance of the notice on that day, and decided that the location for the school-house should be on the lot in question, owned by the plaintiff's intestate. They also declared that the owner did refuse to sell the lot, and they thereupon appraised the damages.

The fundamental errors in their proceedings is, that there had been no foundation laid for their jurisdiction over the question, by any vote of the district. The district had a legal right to adjourn, as they did, for one month, without action or vote on the article in

the warrant. Even if at the adjournment a vote had been taken, and the votes of one-third of the voters had been recorded against it, as provided in the statute, it would have been too late to author-ize their proceedings, which were all finished in August. But nothing of the kind was done. This lot, therefore, has never been legally designated and taken.

There are some other objections made, which it is unnecessary to consider.

It seems that the district has built a new school-house on this lot, suitable every way for the use of the district. It will be a source of regret if the district shall continue to refuse to act, or to act in such a manner as to impede the cause of education, and de-prive their children of the use of a comfortable house. But we can only administer the law, applicable to the case before us. It is for those interested to determine what further measures they will take, if any, to secure this lot legally.

*Judgment for the plaintiff for one dollar damages.*

APPLETON, C. J.; WALTON, DICKERSON, BARROWS, and DAN-FORTH, JJ., concurred.